IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LINDA L. KITZMILLER and
RICHARD C. KITZMILLER, her husband,

    Plaintiffs,

v.                                      Case No 2:05-CV-22

JEFFERSON SUPPLY COMPANY,

    Defendant and
    Third-Party Plaintiff,

v.

THE BUTCHER COMPANY,
a Delaware corporation,

    Third-Party Defendant.

## REPORT AND RECOMMENDATION/OPINION

### I. Procedural History

On October 25, 2004, Plaintiffs Linda L. Kitzmiller and Richard C. Kitzmiller ("Plaintiffs") filed a Complaint in the Circuit Court of Grant County, West Virginia, against The Board of Education of Grant County, West Virginia, and The Jefferson Supply Company ("Jefferson"). On January 19, 2005, Plaintiffs filed an Amended Complaint solely against Jefferson. Jefferson was served on February 4, 2005. On March 3, 2005, Jefferson filed its Notice of Removal to the United States District Court for the Northern District of West Virginia. On March 8, 2005, Jefferson filed its Answer to the Amended Complaint and Third-Party Complaint against The Butcher Company ("Butcher). Butcher was served on March 18, 2005. Butcher filed its Answer to the Third-Party

1

Complaint on April 18, 2005 [Docket Entry 9]. On September 30, 2005, Butcher filed its "Third-Party Counterclaim Against Third-Party Plaintiff The Jefferson Supply Company" [Docket Entry 61].

On March 2, 2006, Plaintiffs and Butcher filed a "Joint Motion to Dismiss Count II of the Amended Complaint" [Docket Entry 101] and a "Joint Motion to Dismiss the Butcher Company" [Docket Entry 102]. On March 16, 2006, Jefferson filed its "Memorandum in Opposition to the Joint Motion to Dismiss the Butcher Company" [Docket Entry 114]. On March 20, 2006, Plaintiffs filed a "Response" to Butcher's objection [Docket Entry 117].

Both Motions to Dismiss were referred to the undersigned United States Magistrate Judge by United States District Judge Robert E. Maxwell for submission of a Report and Recommendation as to the resolution of these dispositive matters.

The undersigned held a hearing on these motions on March 21, 2006. Plaintiffs appeared by counsel Guy Bucci and Nelson Michael; Jefferson appeared by counsel, Michael Crim; and Defendant The Butcher Company ("Butcher") appeared by its counsel Erik Legg.

## II. The Parties' Contentions

In support of their Joint Motion to Dismiss the Butcher Company, Plaintiffs and Butcher assert that they have entered into a good faith settlement as to all claims against the Butcher Company. Plaintiffs have also stipulated and agreed to dismiss Count II, the strict liability cause of action, of the Amended Complaint. The parties further assert that Jefferson's claims against Butcher arise solely out of Plaintiff's product liability cause of action. Therefore, having dismissed Count II of the Complaint and having reached a good faith settlement with Butcher, all causes of action, including those upon which Jefferson's third-party complaint was filed, are required to be dismissed.

2

The parties further assert that dismissal of Butcher will not substantially impair the rights of the remaining parties. The parties finally assert that Plaintiffs' cause of action against Jefferson is predicated on Jefferson's own independent action and not on Butcher's actions; that Jefferson's conduct is at issue; and that Jefferson cannot therefore obtain implied indemnity against Butcher in this case.

Jefferson asserts that the purported settlement between Plaintiffs and Butcher does not meet the "good faith" requirement sufficient to extinguish its claims against Butcher, nor is it effective to extinguish Jefferson's claim for implied indemnification under the facts and circumstances presented in this case. Jefferson argues that: 1) the amount of the settlement is "nominal" compared to the potential liability involved; 2) settlement will unfairly benefit Plaintiffs by limiting the issues for trial and shifting the focus from the issue of whether the Command Center and cleaning products were inherently defective to whether Jefferson was negligent, regardless of whether Jefferson acted consistent with the warnings, instructions and training provided by Butcher, the manufacturer of the Command Center and cleaning products; and 3) the settlement is at least in part for the purpose of singling out Jefferson for a wrongful tactical gain.

### III. Discussion

#### a. Good Faith Settlement

Both parties cite <u>Hager v. Marshall</u>, 505 S.E.2d 640 (W. Va. 1998) in support of their arguments. In <u>Hager</u>, the West Virginia Supreme Court of Appeals stated:

> Settlements are presumptively made in good faith. A defendant seeking to establish that a settlement made by a plaintiff and a joint tortfeasor lacks good faith has the burden of doing so by clear and convincing evidence. Because the primary consideration is whether the settlement arrangement substantially impairs the ability of remaining defendants to receive a fair trial, <u>a settlement lacks good faith only upon

3

<u>a showing of corrupt intent by the settling plaintiff and joint tortfeasor, in that the settlement involved collusion, dishonesty, fraud or other tortious conduct.</u>

Id. at 646 (emphasis added). (Citing <u>Smith v. Monongahela Power Co.</u>, 429 S.E.2d 643 (W. Va.1993) ("The focus of the trial court's determination is not whether the settlement fell within a 'reasonable range' of the settling tortfeasor's proportional share of comparative liability, but whether the circumstances indicate that the non-settling tortfeasor was substantially deprived of a fair trial because of corrupt behavior on the part of the plaintiff and the settling tortfeasor or tortfeasors.").

The court then set forth several factors for the trial court to consider in making the determination of whether a settlement was in good faith:

> Some factors that may be relevant to determining whether a settlement lacks good faith are (1) the amount of the settlement in comparison to the potential liability of the settling tortfeasor at the time of settlement, in view of such considerations as (a) a recognition that a tortfeasor should pay less in settlement than after an unfavorable trial verdict, (b) the expense of litigation, (c) the probability that the plaintiff would win at trial, and (d) the insurance limits and solvency of all joint tortfeasors; (2) whether the settlement is supported by consideration; (3) whether the motivation of the settling plaintiff and settling tortfeasor was to single out a non-settling defendant or defendants for wrongful tactical gain; and (4) whether there exists a relationship, such as family ties or an employer-employee relationship, naturally conducive to collusion.

Id.

The undersigned first finds Jefferson "bears a heavy burden in seeking to prove that the settlement between [Plaintiffs] and [Butcher] was not made in good faith. " <u>Boyd v. Goffoli</u>, 608 S.E.2d 169 (W. Va. 2004). Jefferson's arguments concern only factors (1) and (3) – the amount of the settlement compared to Butcher's potential liability, and the motivation for the settlement. Jefferson argues the amount of the settlement was "nominal" compared to what it asserts may very well be a seven-figure claim, and the motivation of the settlement was to single out Jefferson for a wrongful tactical gain. There is no assertion that the settlement was not supported by consideration, and, in fact, the settlement agreement convinces the Court that the settlement is supported by

consideration. There is also no allegation and no evidence whatsoever that there is any relationship between Butcher and Plaintiffs that would support a finding of collusion.

While it may be true that Butcher's settlement amount is small compared to its potential liability, this is clearly not a primary focus of the analysis. As noted above, the focus of the trial court's determination is not whether the settlement fell within a "reasonable range" of the settling tortfeasor's proportional share of comparative liability, but whether the circumstances indicate that the non-settling tortfeasor was substantially deprived of a fair trial because of corrupt behavior on the part of the plaintiff and the settling tortfeasor or tortfeasors. Smith, *supra*. In Hager, the settling defendant paid only $27,500.00 to the plaintiffs, despite the plaintiffs' own experts having set the damages at more than $642,000.00, and the fact that the non-settling defendant, Equitable, eventually settled its claims with Plaintiffs for $2,000,000. Equitable argued that the amount of the settlement, $27,500.00 was "indicative of collusion, dishonesty, and fraud," but the court found no evidence to substantiate this claim and "no evidence suggesting that the settlement was achieved with corrupt intent." Similarly, the undersigned does not find the amount of the settlement between Butcher and Plaintiffs indicative of any corrupt intent.

There is also no clear and convincing evidence that "the motivation of the settling plaintiff[s] and [Butcher] was to single out [Jefferson] for wrongful tactical gain." See Id. The undersigned first notes the West Virginia Supreme Court's warning in Smith:

> Under the standards we set forth today, if a defendant attempts to overcome the presumption that a settlement is in good faith by showing that the settlors were motivated by wrongful tactical gain, he pulls an exceptionally heavy oar. Obviously, litigation involves a constant effort to acquire a tactical advantage over an opponent.
> . . . .

Smith, at fn. 13. Jefferson argues that Plaintiffs never asserted any direct claim against Butcher, and by settling with Butcher, they have limited the evidence and testimony and shifted the focus of the lawsuit from the issue of whether the products were defective or unsuitable for use, solely to whether

5

Jefferson was negligent. The undersigned first notes that the fact that Plaintiffs had not sued Butcher directly is "of little relevance." See Cline v. White, 393 S.E.2d 923 (W.Va. 1990) (holding that a non-party may be relieved from liability for contribution through a good faith settlement and that the plaintiff's agreement to release its right to pursue a cause of action directly against the third-party defendant was sufficient consideration.). Second, even if the motivation of the settling parties was to achieve a tactical gain, Jefferson has not offered any evidence that the tactical gain was "wrongful." In Smith, supra, the non-settling defendant argued that the plaintiff was motivated to settle with the third-party defendant "by the desire to simplify the issues at trial." In Hager, Equitable argued that "the relationship between the plaintiffs and the settling third-party defendant was 'naturally conducive to collusion' because without the third-party defendants in the case, it would be easier for the plaintiffs to prove their claims against Equitable." Id. At 646. In Boyd, supra, the settlement at issue came on the eve of trial, with no notice to the appellant. The settling tortfeasor was therefore not available at the trial the next day. The appellant argued that the settling tortfeasor committed most, if not all, of the tortious conduct. He then argued that, had the settling tortfeasor been required to testify at the trial, the jury would have had the opportunity to weigh his conduct and demeanor against that of the appellant's witnesses. The appellant therefore argued that the timing of the settlement indicated a corrupt intent to deprive him of a fair trial. In none of these cases did the West Virginia Supreme Court of Appeals find the "tactical advantage[s]" gained by the settling litigants "wrongful."

Neither does the undersigned find that the settlement between Plaintiffs and Butcher was made to single out Jefferson for any wrongful tactical reason.

For all the above reasons, the undersigned finds Jefferson has not met its burden of showing by clear and convincing evidence that the settlement made by Plaintiffs and Butcher lacks good faith, ans therefore **RECOMMENDS** the Court find Plaintiffs and Butcher entered into a good faith

6

settlement. Having determined the settlement was made in good faith, it follows that the settlement between Plaintiffs and Butcher extinguishes all liability based upon contribution. See Hager, *supra*,. ("A party in a civil action who has made a good faith settlement with the plaintiff prior to a judicial determination of liability is relieved from any liability for contribution.").

### b. Implied Indemnity

Jefferson also argues that, even if the settlement is found to have been made in good faith, it is still entitled to indemnification by Butcher. Plaintiffs and Butcher argue that their good faith settlement extinguishes any claims of indemnification by Jefferson. There are two types of indemnity, express and implied. Express indemnity is based upon a written agreement between the parties, while implied indemnity is based upon the relationship between the parties. Jefferson's argument is based on the latter. The West Virginia Supreme Court of Appeals states:

> [T]he most complete discussion of the doctrine of implied indemnification is found in *Hill v. Joseph T. Ryerson & Son, Inc.*, 165 W.Va. 22, 268 S.E.2d 296 (1980). In finding that the remedy of implied indemnity is primarily based on principles of restitution, this Court in *Hill* relied on Restatement of Restitution § 96 (1937), which states: "A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability." We ultimately held in syllabus point two of *Hill* that:
>
>> The general principle of implied indemnity arises from equitable considerations. At the heart of the doctrine is the premise that the person seeking to assert implied indemnity - - the indemnitee - - has been required to pay damages caused by a third party - - the indemnitor. In the typical case, the indemnitee is made liable to the injured party because of some positive duty created by statute or common law, but the actual cause of the injury was the act of the indemnitor. *Id.* at 22, 268 S.E.2d at 299 . . . .
>
> In a later case we further determined that a party seeking indemnification must be without fault saying: "Implied indemnity is based upon principles of equity and restitution and one must be without fault to obtain implied indemnity." Syl. Pt. 2, *Sydenstricker v. Unipunch Products, Inc.*, 169 W. Va. 440, 441, 288 S.E.2d 511, 513 (1982).

Harvest Capital v. West Virginia Dept. of Energy, 560 S.E.2d 509 (W. Va. 2002). The Court

7

concluded:

> [W]e find that the principles enunciated in *Hill* and *Sydenstricker*, compel the conclusion that the requisite elements of an implied indemnity claim in West Virginia are a showing that: (1) an injury was sustained by a third party; (2) for which a putative indemnitee has become subject to liability because of a positive duty created by statue or common law, but whose independent actions did not contribute to the injury; and (3) for which a putative indemnitor should bear fault for causing [sic] because of the relationship the indemnitor and indemnitee share.

Id. at 514.

Plaintiffs have agreed to dismiss Count II of the Complaint, alleging strict liability against Jefferson. Their only remaining claim against Jefferson is based on negligence. Jefferson therefore cannot "become subject to liability because of a positive duty created by statue or common law," such as is the case in a products liability case where a seller's only liability to an injured purchaser is based on strict liability. For Jefferson to be held liable in this case, a jury would necessarily have to find Jefferson negligent. Therefore Jefferson is not entitled to implied indemnification by Butcher.

Having found that Jefferson is not entitled to implied indemnity, it would normally not be necessary to address the other contentions raised by the parties. Because this is a Report and Recommendation, however, the undersigned will address the additional issues.

Again, because the case is based on negligence and not strict liability, the only way Jefferson can be held liable is based upon its own negligence. If Jefferson should be found negligent, however, it could not be "without fault," and therefore would not be entitled to implied indemnity. On the other hand, should Jefferson be found not liable, it would not be "required to pay damages caused by a third party." Jefferson argues that in this scenario, it may be entitled to indemnification for attorneys fees and costs associated with defending against the claim. Butcher and Plaintiffs argue they know of no case that suggests attorneys fees are recoverable through indemnification.

In fact, the West Virginia Supreme Court of Appeals has answered the question of

entitlement to attorneys' fees in the negative. In Harvest, *supra*, both parties (The DEP and Harvest) had been dismissed as defendants in a lawsuit. The lower court determined that the DEP had the duty to defend and indemnify Harvest in the underlying suit, and therefore granted summary judgment to Harvest, resulting in the DEP being liable for Harvest's attorneys fees and costs. The "pivotal issue" addressed by the Court of Appeals was:

> [W]hether the lower court properly applied the law of this State with regard to implied indemnity when it rules that attorneys' fees and expenses may be recovered pursuant to an implied indemnity theory even though the underlying liability claim was dismissed and it was not established in that suit that an injury has been sustained or a wrong has been committed against a third party.

The undersigned therefore finds that, even under Jefferson's scenario, there would be no right to indemnification.

## IV. RECOMMENDATION

For all the above reasons, the undersigned respectfully recommends Plaintiffs' and Butcher's "Joint Motion to Dismiss Count II of the Amended Complaint" [Docket Entry 101] and "Joint Motion to Dismiss the Butcher Company" [Docket Entry 102] be **GRANTED**. The undersigned further recommends the "Order of Voluntary Dismissal of Count II of the Amended Complaint" and "Dismissal Order" both be entered by the Court.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn,

474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 10 day of April, 2006.

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE